## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA,** | § § § | |
| **Plaintiff,** | § § | |
| | § | **Case No. 4:20-CV-00183-O** |
| **v.** | § § | |
| **ABRAHAM "ABE" MICHAEL FACTOR AND KIMBERLEY SUSAN CAMPBELL FACTOR, A/K/A KIMBERLEY SUSAN CAMPBELL,** | § § § § | |
| | § | |
| **Defendant.** | § | |

---

## BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STANDARD OF REVIEW ................................................................................. 1

III.    ARGUMENT ...................................................................................................... 2

        A.    The government relies on unreliable records to claim that the statute of
            limitations for collecting taxes remains open. .........................................................2

            1.    With respect to the statute of limitations for all tax years in
                  question, the government's reliance on the Form 4340 is not
                  credible....................................................................................................3

            2.    With respect to the 2005 tax year, the government's purported
                  assessment violated the summary assessment statute of 26 U.S.C. §
                  6201(a)(1) ...............................................................................................5

            3.    With respect to the 2006 tax year, there is insufficient evidence to
                  determine if the government timely filed its complaint within the
                  period of limitations ..............................................................................6

        B.    Any failure by Mr. and Mrs. Factor to pay taxes was due to reasonable
            cause such that the penalties imposed by the IRS should be abated......................6

            1.    The penalties against Mr. and Mrs. Factor should be abated
                  because their business was financially incapacitated resulting from
                  the embezzlements ..................................................................................9

            2.    The penalties against Mr. and Mrs. Factor should be abated
                  because both Mr. and Mrs. Factor suffered from serious illness
                  while managing the deaths and serious illnesses of their immediate
                  family members .....................................................................................13

IV.    CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Am. Society of Mech. Eng., Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982) ................................ 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ... 2

*Brown v. United States*, 630 F. Supp. 57 (M.D. Tenn. 1985) ........................................................ 13

*Estate of Henson v. Wichita Cty.*, 652 F. Supp. 2d 730, 738 (N.D. Tex. 2009) ............................ 2

*In re Am. Biomaterials Corp.*, 954 F.2d 919 (3d Cir. 1992) ................................................... 11, 12

*Irving v. Comm'r*, T.C. Memo. 2006-169, 2006 WL 2370238 (2006) ......................................... 14

*Ralim v. Comm'r*, 144 T.C. 140, 150 (2015) ............................................................................... 13

*SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) ....................................................................... 1

*Staff IT, Inc. v. United States*, 482 F.3d 792 (5th Cir. 2007) ...................................................... 10

*United States ex rel. Taylor-Vick Smith*, 513 F.3d 228, 230 (5th Cir. 2008). ............................... 2

*United States v. Boyle*, 469 U.S. 241, 245-46 (1985) ......................................................... 9, 10, 11

*United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992) ....................................................... 3

**Statutes**

26 C.F.R. § 301.7701-9 .................................................................................................................. 4

26 U.S.C. § 6201(a)(1) ................................................................................................................ 5, 6

26 U.S.C. § 6330(e)(1) ................................................................................................................... 3

26 U.S.C. § 6501 ........................................................................................................................ 3, 4

26 U.S.C. § 6501(a) ....................................................................................................................... 2

26 U.S.C. § 6502 ........................................................................................................................ 2, 3

26 U.S.C. § 6503(a)(1) ................................................................................................................... 3

26 U.S.C. § 6503(a)(2) ................................................................................................................... 3

26 U.S.C. § 6651(a)(1) .............................................................................................................. 9, 10

26 U.S.C. § 6651(a)(2)......................................................................................................... 9, 10

26 U.S.C. § 6656 ...................................................................................................................... 9

44 U.S.C. § 3101 ...................................................................................................................... 4

**Other Authorities**

Deleg. Order 11-5 (Rev. 1) .................................................................................................. 4, 5

I.R.M. 1.2.1.4.2, Policy Statement 3-2 ........................................................................... 14, 15

Treas. Direct. 12-51 .................................................................................................................. 4

Treas. Direct. 73-04 .................................................................................................................. 4

Treas. Direct. 80-05 .................................................................................................................. 4

Treas. Order 150-10 .................................................................................................................. 4

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **THE UNITED STATES OF** | § | |
| **AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case No. 4:20-CV-00183-O** |
| **v.** | § | |
| | § | |
| **ABRAHAM "ABE" MICHAEL** | § | |
| **FACTOR AND KIMBERLEY SUSAN** | § | |
| **CAMPBELL FACTOR, A/K/A** | § | |
| **KIMBERLEY SUSAN CAMPBELL,** | § | |
| | § | |
| **Defendant.** | § | |

**BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO GOVERNMENT'S
MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

To deny Mr. and Mrs. Factor's day in court, the government paints a story that is simply wrong. The government's Motion for Summary Judgment relies on unreliable proof which does little to bolster its claims. Moreover, the government's arguments fail to take into account key facts and are certainly insufficient to award the drastic relief sought here. Further, the government presents information by individuals who lack authority to substantiate such information.

## II.     STANDARD OF REVIEW

When determining a Motion for Summary Judgment, the court "reviews the evidence and inferences therefrom in the light most favorable to the nonmoving party." *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). Summary judgment is appropriate and will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to summary judgment as a matter of law." *United States ex rel. Taylor-Vick Smith*, 513 F.3d 228, 230 (5th Cir. 2008). The movant—here, Plaintiff—bears the burden to "make[] a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues." *Estate of Henson v. Wichita Cty.*, 652 F. Supp. 2d 730, 738 (N.D. Tex. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III. ARGUMENT

### A. The government relies on unreliable records to claim that the statute of limitations for collecting taxes remains open.

The government filed an original complaint against Mr. and Mrs. Factor on February 26, 2020 seeking to collect taxes for the 2005, 2006, 2015, and 2016 tax years. **Gov't Original Complaint pp. 1-9.** The government alleges that the assessment dates of the taxes with respect to the 2005, 2006, 2015, and 2016 tax years are May 14, 2007, November 5, 2007, November 21, 2016, and November 20, 2017, respectively. **Gov't Original Complaint pp. 1-9; Gov't Brief in Support of Motion for Summary Judgment p. 3.** Further, the government alleges that the statute(s) of limitations to assess and collect the 2005 and 2006 liabilities did not expire before it filed its suit. **Gov't Brief in Support of Motion for Summary Judgment p. 11.** The government has failed to meet its burden.

In general, 26 U.S.C. § 6501(a) requires that the amount of tax, with respect to which a return must be filed, must be assessed within three years after the return is filed, whether the return is filed timely or late. Once a timely assessment has been made, 26 U.S.C. § 6502 requires that the time for collection, either by levy or by a judicial proceeding, must be commenced within ten

years after the assessment.[1]  Genuine factual disputes as to whether the government has timely brought suit remain.

> **1.    With respect to the statute of limitations for all tax years in question, the government's reliance on the Form 4340 is not credible.**

The government claims that its suit against Mr. and Mrs. Factor was commenced less than ten years after the liabilities for the 2015 and 2016 tax years were assessed and more than ten years after the liabilities for the 2005 and 2006 tax years were assessed.  **Gov't Brief in Support of Motion for Summary Judgment p. 5.**  Further, the government contends that the statute of limitations pursuant to 26 U.S.C. § 6502 was suspended for the 2005 and 2006 tax years when Mr. and Mrs. Factor filed separate Collection Due Process hearing requests for each of the 2005 and 2006 tax years.  **Gov't Brief in Support of Motion for Summary Judgment pp. 5-6.**  In relying on the dates of assessment for all tax years in question and the dates to which the statute of limitations may have been suspended, the government has furnished invalid copies of Certificates of Assessments and Payments ("Forms 4340").  **Gov't App. pp. 192-224.**  The copies of the Forms 4340 that the government has furnished were signed by Janice Williams, Accounting Operations Manager, Submission Processing (Austin).  **Gov't App. pp. 192, 203, 204, 213, 214, 219, 220, 224.**  While a valid Form 4340 has sometimes established an IRS tax assessment, an invalid Form 4340 does no such thing.  *See United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992).  The version of the government's Forms 4340 on which it relies is not proof of a valid assessment.

Federal agencies are required to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential

---

[1] The running of the limitations period for assessment under 26 U.S.C. § 6501 and for collection under 26 U.S.C. § 6502 may be suspended under certain circumstances, including, *inter alia*, when the IRS issues a notice of deficiency or a taxpayer makes a request for a collection due process hearing. 26 U.S.C. §§ 6503(a)(1), 6330(e)(1).

transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101.  Pursuant to 44 U.S.C. § 3101, the Secretary of the Treasury may delegate such functions to the Commissioner of the Internal Revenue Service.  26 C.F.R. § 301.7701-9; Treas. Direct. 12-51; Treas. Direct. 73-04; Treas. Direct. 80-05; and Treas. Order 150-10.

The Commissioner of the Internal Revenue Service may, and has, subsequently delegated its authority to "affix the official seal of the Internal Revenue Service to any certificate or attestation required to be made in authentication of originals and copies of books, records, papers, writings, and documents of the Internal Revenue Service in the custody of the Commissioner, Internal Revenue" for most purposes.   Deleg. Order 11-5 (Rev. 1).[2]   Specifically, the Commissioner has delegated this authority to: Division Commissioners; Chiefs; Directors reporting to the Commissioner or Deputy Commissioner; National Taxpayer Advocate; Deputy Associate Chief Information Officer; Special Agents in Charge; Supervisory Investigative Analysts; Field Directors, Submission Processing; Directors, Campus Compliance Operations; SB/SE Technical Services Group Managers; SB/SE Advisory Group Managers; SB/SE Insolvency Group Managers; Chief Disclosure; Disclosure Managers; Supervisory Peripheral Equipment Operator, GLD; Disclosure Specialists and technical staff of the Chief, Disclosure; and supervisory personnel assigned duties requiring the affixing of an official seal.  *Id* (emphasis added).  The Delegation Order makes clear, however, that "[t]his authority may not be redelegated."  *Id.*

To support its contention that assessments with respect to the 2005, 2006, 2015, and 2016 tax years were timely made pursuant to 26 U.S.C. § 6501, the government provides purported Forms 4340, signed by Janice Williams, Accounting Operations Manager, Submission Processing

---

[2] Available at: https://www.irs.gov/pub/foia/ig/spder/do-11-5.pdf (last accessed on December 29, 2020).

(Austin).  **Gov't App. pp. 192, 203, 204, 213, 214, 219, 220, 224.**  Yet, the literal text of Deleg. Order 11-5 (Rev. 1) does not authorize an "Accounting Operations Manager, Submission Processing" to sign, seal, date, and certify the transcripts and Forms 4340 that the government is attempting to use to prove that tax assessments were timely made.  Thus, the Internal Revenue Service did not follow legal and administrative procedures in issuing the transcripts to which the government relies, and therefore, the Forms 4340 are not valid evidence of assessment.  The government has failed to produce a single record other than a document signed by an individual lacking the requisite authority.  While federal statutes, regulations, and Treasury Decisions redelegate the authority to certify the transcripts, Deleg. Order 11-5 (Rev. 1) specifically states that the authority cannot be redelegated.  Significant issues of material fact remain.

Moreover, discovery for this action is not set to close for another nearly eight months – *i.e.*, on August 21, 2021.  **Scheduling Order.**  Notwithstanding the other significant issues discussed below, the government's desire to end this case so prematurely robs Mr. and Mrs. Factor of their right to take discovery regarding whether the government's suit is timely.

> **2.    With respect to the 2005 tax year, the government's purported assessment violated the summary assessment statute of 26 U.S.C. § 6201(a)(1).**

Mr. and Mrs. Factor filed their 2005 Federal income tax return on April 13, 2007.  **Gov't App. p. 193.**  The government, however, acknowledged that it did not process and assess Mr. and Mrs. Factor's 2005 Federal income tax return until May 14, 2007.  In general, the Secretary "shall assess all taxes determined by the taxpayer or by the Secretary."  26 U.S.C. § 6201(a)(1).  This assessment authority is mandatory, and when a return is filed, the IRS is required to assess the taxes determined by the taxpayer on the filed return and to further determine additional taxes if necessary.

Despite the fact that Mr. and Mrs. Factor determined their own tax liability with respect to the 2005 Federal income tax return on April 13, 2007, the IRS, even using the government's dates, waited over one full month after the 2005 Federal income tax return was filed to make and confirm the tax assessment that Mr. and Mrs. Factor self-reported. This delay is abusive and unreasonable at best and violates 26 U.S.C. § 6201(a)(1). The late assessment may not be utilized now to the detriment of the Factors.

> **3.    With respect to the 2006 tax year, there is insufficient evidence to determine if the government timely filed its complaint within the period of limitations.**

In demonstrating the date on which Mr. and Mrs. Factor filed their 2006 Federal income tax return, the government provides the filed Form 8879, IRS e-file Signature Authorization page. **Gov't Brief in Support of Motion for Summary Judgment p. 4; Gov't App. p. 274.** Though Mr. and Mrs. Factor signed the Form 8879 that was submitted contemporaneously with their 2006 Federal income tax return, the Form 8879 is undated, of which the government is most certainly aware. **Gov't App. p. 274; Exhibit D, Def. App. p. 022.** Based on the evidence provided (*e.g.*, the undated Form 8879) combined with the issued, but unauthorized Form 4340 discussed in Section III.A.1 of this response, the date on which Mr. and Mrs. Factor filed their 2006 Federal income tax return cannot be surmised with any certainty. Therefore, as of the date of filing this response, there is insufficient evidence to determine whether the limitations period has run and if the government's assessment and collection actions were timely. The uncertainty surrounding the filing date of Mr. and Mrs. Factor's 2006 Federal income tax return indicates a genuine issue of material fact exists in this case given the need for additional discovery.

> **B.    Any failure by Mr. and Mrs. Factor to pay taxes was due to reasonable cause such that the penalties imposed by the IRS should be abated.**

As background to the analysis discussed below, the facts described below are informative. Mr. and Mrs. Factor are attorneys who started their law practice in 1998, which they operated as a disregarded entity for Federal income tax purposes and reported their business income and expenses on their Form 1040, Schedule C. **Exhibit B, Def. App. p. 011; Exhibit C, Def. App. p. 016.** When they started their practice, Mr. and Mrs. Factor hired an individual, Jonell Smith, to be their office manager and bookkeeper. **Exhibit B, Def. App. p. 011; Exhibit C, Def. App. p. 016.** After three years of financial difficulty, they discovered that Ms. Smith had been embezzling from the law practice. **Exhibit B, Def. App. p. 011; Exhibit C, Def. App. p. 016.** Upon this discovery, Mr. and Mrs. Factor immediately terminated Ms. Smith and hired seemingly competent finance and accounting professionals (Becky Ramirez and Deborah Stevenson, CPA) to assist them with preparing any delinquent return filings. **Exhibit B, Def. App. p. 012; Exhibit C, Def. App. p. 017.** Mr. and Mrs. Factor temporarily deferred their tax filing after discovering Ms. Smith's embezzlement in order to have sufficient time to prepare an accurate tax return and thereby calculate the proper amount of taxable income and resulting tax liabilities as they believed they would have large tax losses and loss carryovers to offset their income. **Exhibit B, Def. App. p. 012; Exhibit C, Def. App. p. 017.** Due to the financial and emotional stress related to the looming tax liabilities, Mr. Factor often worked as much as 80 hours per week while Ms. Ramirez and Ms. Stevenson were tasked with managing the business and day-to-day operations of the law practice. **Exhibit B, Def. App. p. 012; Exhibit C, Def. App. p. 017.**

In 2003, Mr. and Mrs. Factor discovered that Ms. Ramirez had also been embezzling funds from the law practice. **Exhibit B, Def. App. p. 012; Exhibit C, Def. App. p. 017.** The amount which was stolen was in excess of $300,000.00. **Exhibit B, Def. App. p. 012; Exhibit C, Def. App. p. 017.** Ms. Ramirez was convicted and was serving or currently is serving a prison sentence.

**Exhibit B, Def. App. p. 012; Exhibit C, Def. App. p. 017.** Meanwhile, Mr. and Mrs. Factor were awarded a separate judgment against Ms. Ramirez; however, the judgment was mostly uncollectible. **Exhibit B, Def. App. p. 012; Exhibit C, Def. App. p. 017.** Because of the embezzlement actions by both Ms. Smith and Ms. Ramirez, Mr. and Mrs. Factor suffered several financial hardships, which negatively impacted their business and further incapacitated their business for several years. **Exhibit B, Def. App. p. 012; Exhibit C, Def. App. p. 017.**

In addition to the financial hardships that incapacitated their business, Mr. and Mrs. Factor were also themselves suffering serious illnesses, as were their immediate family members. In 2006, Mr. and Mrs. Factor's son was diagnosed with Type 1 Diabetes, which required 24/7 management and constant care from both Mr. and Mrs. Factor. **Exhibit A, Def. App. p. 005.** Concurrent to the care and attention required by their son's disease, Ms. Factor's sister also had a brain aneurysm, which required her sister to undergo several surgeries who was thereafter unable to care for her two children. **Exhibit A, Def. App. p. 005.** Mrs. Factor's niece and nephew subsequently moved in with Mr. and Mrs. Factor and their three children. **Exhibit A, Def. App. p. 005.** Mr. and Mrs. Factor provided substantial financial support to Mrs. Factor's sister, niece, and nephew. During this same tax year, Mr. Factor's mother died. **Exhibit A, Def. App. p. 005.**

As it relates to the 2015 tax year, Mrs. Factor's father was seriously ill during 2015 through his death in 2017, and both Mr. and Mrs. Factor were intimately involved in his care. **Exhibit A, Def. App. p. 005.** In addition, since 2012, Mrs. Factor was diagnosed with Epstein-Barr and suffered, and continues to suffer, from symptoms through all periods relevant to the 2015 tax year. **Exhibit A, Def. App. p. 005.** All of the above-referenced personal and family health issues were incredibly trying and difficult for both Mr. and Mrs. Factor. **Exhibit A, Def. App. p. 005.**

In 2018, Mr. Factor, while undergoing a medical procedure, was diagnosed with atrial fibrillation and soon thereafter was also diagnosed with stage II large B Cell Non-Hodgkin's lymphoma which presented in the form of a large (approximately half an apple) size tumor that had abscessed through the interior wall of his stomach.  **Exhibit A, Def. App. p. 006.**   It is understood that he suffered from the disease prior to its detection.  **Exhibit A, Def. App. p. 006.** Since that time, Mr. Factor has been diagnosed numerous times for cancer, gone through various medical therapies (including chemotherapy and surgical removals), and lost nearly 50 pounds.  **Exhibit A, Def. App. p. 006.**  If that was not enough, Mr. Factor is also a type II diabetic who suffers from severe arthritis in both knees (bone on bone) making it difficult for him to walk.  **Exhibit A, Def. App. p. 006.**  Mrs. Factor was recently diagnosed with macular degeneration that has worsened her vision and is expected to continue to worsen her vision.  **Exhibit A, Def. App. p. 006.**

Compounding all of these issues, Mr. and Mrs. Factor suffered from fires at their home in 2008 and at their office in 2011.  Both of these fires caused losses of essential records and financial resources.  **Exhibit A, Def. App. p. 006.**

> **1.    The penalties against Mr. and Mrs. Factor should be abated because their business was financially incapacitated resulting from the embezzlements.**

In the event a taxpayer fails to timely file returns, pay taxes due, or make deposit of taxes, the IRS may impose a penalty upon the taxpayer unless, as here, the taxpayer can demonstrate that said failure is due to reasonable cause and not due to willful neglect.  26 U.S.C. §§ 6651(a)(1), (2), 6656(a).  The term "willful neglect" has been defined as "meaning a conscious, intentional failure or reckless indifference."  *United States v. Boyle*, 469 U.S. 241, 245-46 (1985) (citations omitted). In the case at bar, the government has presented no evidence that Mr. and Mrs. Factor have

committed willful neglect.  Rather, the sole issue raised by the government is whether any failures to timely file income tax returns and timely pay income taxes were due to reasonable cause.

The Fifth Circuit in *Staff IT, Inc. v. United States*, 482 F.3d 792 (5th Cir. 2007) has shed some light on what constitutes reasonable cause under the Treasury Regulations as "there is no jurisprudential definition of reasonable cause."  *Id.* at 798.  For failure-to-file situations as in the *Boyle* case, under section 6651(a), "[i]f the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to reasonable cause."  *Staff IT,* 482 F.3d at 798 (quoting 26 U.S.C. § 6651(a)(1)).  For failure-to-pay situations, section 6651(a)(2) states as follows:

> A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161-1(b) of this chapter) if he paid on the due date.  In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to *all the facts and circumstances* of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income (or other amounts) he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax.  Thus, for example, a taxpayer who incurs lavish or extravagant living expenses in an amount such that the remainder of his assets and anticipated income will be insufficient to pay his tax, has not exercised ordinary business care and prudence in providing for the payment of his tax liability.  Further, a taxpayer who invests funds in speculative or illiquid assets has not exercised ordinary business care and prudence in providing for the payment of his tax liability unless, at the time of the investment, the remainder of the taxpayer's assets and estimated income will be sufficient to pay his tax or it can be reasonably foreseen that the speculative or illiquid investment made by the taxpayer can be utilized (by sale or as security for a loan) to realize sufficient funds to satisfy the tax liability.  A taxpayer will be considered to have exercised ordinary business care and prudence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due.

*Staff IT*, 482 F.3d at 799 (quoting 26 U.S.C. § 6651(a)(2)).

*In re Am. Biomaterials Corp.*, a corporation filed for bankruptcy following embezzlement by two of the corporation's officers. 954 F.2d 919 (3d Cir. 1992). The IRS filed a proof of claim against the corporation for unpaid income, social security taxes, and unemployment taxes. The corporation sought to reduce the proof claim by the penalties assessed by the IRS pursuant to section 6651. The court found that to escape the penalties, the taxpayer bore the burden of proving both that the failure did not result from willful neglect and that the failure was due to reasonable cause. The government attempted to argue that based on the cases of *Boyle* (reliance upon an estate's attorney to file the estate tax return was not reasonable cause) and *Am. Society of Mech. Eng., Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982) (tortious actions of a corporation's agents subject the corporation to liability), the embezzlement of the corporation's officers should be imputed to the corporation such that it could not constitute reasonable cause.

The *Biomaterials* court then underwent an examination of the general rules of agency law, initially examining the *Hydrolevel* case cited by the government and stating as follows: "As the Court made clear, what determined ASME's corporate liability to Hydrolevel under the antitrust laws was not the presence or absence of benefit to ASME from the agents' frauds, but rather the creation of apparent authority in the agents by ASME." *Biomaterials*, 954 F.2d at 924. The *Biomaterials* court found that "for punitive damages to be imposed vicariously on the employer, the employee must be acting within the scope of the employment. And in no jurisdiction that our research has uncovered does an employee who embezzles from the corporation act in the scope of employment in doing so." *Id*. at 924-25 (citing Restatement (2d) of Agency § 235) (internal citation omitted). The *Biomaterials* court concluded that the failure to pay was due to reasonable cause because the criminal actions of the company's officers prevented the corporation from fulfilling its payment obligations.

Like the taxpayer in *Biomaterials*, Mr. and Mrs. Factor did not "sign off" on Ms. Smith's and Ms. Ramirez's embezzlement actions. The embezzlement directly impacted Mr. and Mrs. Factor from timely filing their tax returns as it required significant time and effort to determine the extent of the embezzlement and the resulting financial ramifications. Here, Mr. and Mrs. Factor's business was incapacitated as a result of their employees' fraudulent actions, and therefore, penalty excusal is warranted on the basis of the reasonable cause exception.

Moreover, the government contends that because the "taxes in issue are personal income taxes, not business taxes," the embezzlement by Mr. and Mrs. Factors' employees does not constitute reasonable cause. **Gov't Brief in Support of Motion for Summary Judgment p. 15.** However, during the years in which the embezzlement occurred, Mr. and Mrs. Factor reported the income from the operations of their law practice on their Form 1040, Schedule C as the entity which operated the law practice was a disregarded entity for Federal income tax purposes. Thus, the government is incorrect. The embezzlement directly impacted Mr. and Mrs. Factor's cash flow and ability to pay their personal tax liabilities with respect to income they earned and reported on their personal tax returns.

Further, the government wants to put forth a false narrative suggesting that Mr. and Mrs. Factor "have a long history of not timely filing their federal tax returns, not making sufficient quarterly estimated tax payments, and not timely paying their federal income taxes" and instead lived an "extravagant lifestyle" while "financing their adult sons' educations at expensive universities." **Gov't Brief in Support of Motion for Summary Judgment p. 15.** The government bases this off of the fact that Mr. and Mrs. Factor provided *some* financial assistance to their children while they attended Tulane University, Georgetown University, Duke University School of Law, and University of California-Los Angeles School of Law "in expensive cities such

as New Orleans, Los Angeles, and Washington, D.C. **Gov't Brief in Support of Motion for Summary Judgment p. 3.** However, the government fails to add that while Mr. and Mrs. Factor made some payments towards their children's higher education expenses, Mr. and Mrs. Factor's children also incurred student loan debt. **Gov't App. pp. 148, 169, 170.** The government makes incredibly flawed logical leaps to suggest that Mr. and Mrs. Factor financed extravagant college experiences for their children based solely on the city in which the college was located. However, there is no evidence in the record to even hint that Mr. and Mrs. Factor's children lived an extravagant college lifestyle given the fact that Mr. and Mrs. Factor did not provide full financial support during their children's pursuit of higher education. In reality, the government's assertion that Mr. and Mrs. Factor "have a long history of not timely filing their federal tax returns, not making sufficient quarterly estimated tax payments, and not timely paying their federal income taxes" was not due to an "extravagant lifestyle;" rather, the cause of any troubles was largely the result of the embezzlement and financial impairment, which negatively impacted their ability to maintain tax compliance.

> **2.    The penalties against Mr. and Mrs. Factor should be abated because both Mr. and Mrs. Factor suffered from serious illness while managing the deaths and serious illnesses of their immediate family members.**

In general, both the death or serious illness of the taxpayer or a member of the taxpayer's immediately family and destruction by casualty of a taxpayer's records or place of business constitute reasonable cause. *See Ralim v. Comm'r*, 144 T.C. 140, 150 (2015). Numerous cases have held that serious illness and health issues of a taxpayer or his or her family member justify a finding of reasonable cause: *Brown v. United States*, 630 F. Supp. 57 (M.D. Tenn. 1985) (attorney's illness precluded attorney, and thus the taxpayer, from filing a timely return, which constituted reasonable cause for the late filing when taxpayer argued that the attorney's illness was

tantamount to the illness of a member of taxpayer's immediate family); and *Irving v. Comm'r*, T.C. Memo. 2006-169, 2006 WL 2370238 (2006) (reasonable cause found when taxpayer suffered debilitating physical ailment, taxpayer's wife suffered a miscarriage, and taxpayer lost all of his electronically stored business records due to a computer malfunction).

In addition to the case law discussed above, the IRS's own policy as to establishing reasonable cause and penalty abatement states:

> Any sound reason advanced by the taxpayer as the cause for delay in filing a return, making deposits under the Federal Tax Deposit System, or paying tax when due, will be carefully analyzed to determine whether the applicable penalty should be asserted. Examples of sound causes for delay which, if established, <u>will be accepted</u> as reasonable cause are . . .: [d]eath or serious illness of the taxpayer or death or serious illness in his/her immediate family. . . . Destruction by fire or other casualty of the taxpayer's place of business or business records.

> Acceptable explanations of delinquency are not limited to the examples given above, since any reason for delinquency in filing or making deposits or payment which established that the taxpayer exercised ordinary business care and prudence but was nevertheless unable to comply within the prescribed time will be accepted as reasonable case.

I.R.M. 1.2.1.4.2, Policy Statement 3-2 (emphasis added).

Like the taxpayer in *Irving*, Mr. and Mrs. Factor personally suffered from several illnesses while struggling with the loss of records due to a fire at their home in 2008 and a fire at their office in 2011. In addition, Mr. and Mrs. Factor's immediate family members, which include their son, parents, and sister suffered from their own illnesses of whom Mr. and Mrs. Factor became primary caregivers. The facts Mr. and Mrs. Factor have presented, such as the illnesses of both Mr. and Mrs. Factor and their immediate family members, the fires which destroyed important business records, and the embezzlements, establish reasonable cause and abatement of penalties. Further, the government's request to uphold penalties in this case is contrary to statutory authority as well as the IRS's own policy that "[a]ny sound reason advanced by the taxpayer" in order to establish

reasonable cause should be considered. I.R.M. 1.2.1.4.2, Policy Statement 3-2.  Certainly, the facts Mr. and Mrs. Factor have put forth to establish reasonable cause are sound.

The government claims that "[t]he Factors made no showing . . . that their health problems . . . adversely affected their income or prevented them from paying their taxes, nor did they produce any evidence . . . in discovery."  **Gov't Brief in Support of Motion for Summary Judgment p. 23.**  However, Mr. and Mrs. Factor have produced significant evidence during discovery, including responses to the government's interrogatories and an affidavit describing the illnesses and financial struggles they endured, in order to establish reasonable cause.  **Exhibit A, Def. App. pp. 005, 006; Exhibit B, Def. App. pp. 011-014; Exhibit C, Def. App. pp. 016-018.**  Accordingly, the government's misrepresentation that Mr. and Mrs. Factor have not produced any evidence is incorrect as Mr. and Mrs. Factor have, in fact, met their burden to substantiate their factual position in establishing reasonable cause.

The government further contends that Mr. and Mrs. Factor's reasonable cause defense should be dismissed because neither "equity" nor "[f]inancial hardship" are defenses to these penalties.  **Gov't Brief in Support of Motion for Summary Judgment p. 24.**  However, to support this claim, the government cites to non-precedential authority, which is not controlling in this case.  As discussed above, both section 6651 and the IRS's own policy provides a plethora of examples of reasonable cause and Mr. and Mrs. Factor have demonstrated that their situation falls squarely within both the statute and the Internal Revenue Manual.  All facts and arguments raised in this brief and supporting appendix are incorporated herein.

Given the particular factual circumstances of this case, a reasonable jury can, and should, return a verdict that Mr. and Mrs. Factor had reasonable cause for some, if not all, of the tax years subject to the government's original compliant. Because there are genuine issues of material fact

with regards to whether reasonable cause existed in this case, this Court must deny the government's Motion for Summary Judgment.

## IV.    CONCLUSION

The government's Motion for Summary Judgment relies on facts that are unreliable and insufficient proof.  Based on the foregoing, Mr. and Mrs. Factor respectfully request that this Court deny the government's Motion for Summary Judgment because there are genuine issues of material fact with regards to the timeliness of the government's suit and the existence of reasonable cause.

Respectfully submitted,

/s/ Mary E. Wood
Mary E. Wood
State Bar No. 24047137

/s/ Josh O. Ungerman
Josh O. Ungerman
State Bar No. 20393150

/s/ Jeffrey M. Glassman
Jeffrey M. Glassman
State Bar No. 24090128

MEADOWS, COLLIER, REED,
COUSINS, CROUCH & UNGERMAN, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
mwood@meadowscollier.com
jungerman@meadowscollier.com
jglassman@meadowscollier.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Defendants' Response Brief to the United States'

Motion for Summary Judgment was served by the ECF-system on the January 4, 2021 on the

following:

Ramona S. Notinger
U.S. Department of Justice, Tax Division
717 N. Harwood, Suite 400
Dallas, Texas 75201


/s/ Jeffrey M. Glassman
Jeffrey M. Glassman