IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00183-O |
| | § | |
| ABRAHAM MICHAEL FACTOR & | § | |
| KIMBERLEY SUSAN CAMPBELL | § | |
| FACTOR | § | |
| | § | |
|    Defendants. | § | |

**ORDER**

Before the Court is the United States of America's Motion for Summary Judgment (ECF No. 51), filed December 11, 2020. Having reviewed the briefing, relevant facts, and applicable law, the Court finds the Motion should be **GRANTED.**

**I.   BACKGROUND**

This case is a federal income tax dispute between the Government and Defendants Abraham and Kimberley Factor, a self-employed married couple. Mot. 2, ECF No. 52. The Factors are both criminal defense attorneys licensed by the State of Texas and have practiced law together in Fort Worth, Texas for over two decades. *Id*.

The Government claims that the Factors owe $1,242,865.95 in federal income taxes and penalties from 2005, 2006, 2015, and 2016, less $107,883.06 and $78,509.56 for voluntary payments made on July 9, 2020[1] and January 11, 2021, respectively. *Id*. at 3–5; Reply 5, ECF. No. 57. For each of the four tax years at issue, the Factors filed their income tax returns but failed to pay the tax liabilities they self-assessed. Compl. 3, ECF No. 49; Mot. 4, ECF No. 52. On July 30,

---

[1] The parties dispute the exact date this payment was made. The Factors contend it was made on July 8, 2020, not July 9, 2020. Answer at 3, ECF No. 50. This discrepancy is immaterial.

1

2008, the Factors filed a request for a Collections Due Process ("CDP") hearing regarding their 2005 and 2006 taxes, which was resolved on March 3, 2011.[2] Mot. 12, ECF No. 52. The IRS assessed the Factors' 2005, 2006, 2015, and 2016 taxes on May 14, 2007; November 5, 2007; November 21, 2016; and November 20, 2017, respectively.[3] *Id*. at 3. The Factors have a history of late filing their taxes but only face a late filing penalty for 2005. *Id*.

According to the Factors, they have faced a few hardships over the past two decades. Apparently their first bookkeeper, Jonell Smith, who they hired when they started their law practice in 1998, embezzled for three years before they noticed and terminated her. Resp. 7, ECF No. 55. The Factors did not pursue legal action against her. The Factors did not provide any evidence—or even the relative dates of any events—related to Ms. Smith. *Id*. at 7–12. The Factors replaced Ms. Smith with Becky Ramirez, who they fired in 2003 after discovering she also embezzled from their practice. *Id*. at 7. The Factors claim Ms. Ramirez served or is currently serving a prison sentence and that they were awarded a judgment against her, but they do not provide any evidence of these facts either. Resp. 7–8, ECF No. 55.

Several health issues between the Factors and their family members also supposedly inhibited their ability to pay their taxes. These issues include but are not limited to, their son being diagnosed with diabetes, Ms. Factor's sister having a brain aneurysm which required they take care of her children, Mr. Factor's father dying, Ms. Factor's mother dying, Ms. Factor receiving an Epstein-Barr diagnosis and macular degeneration diagnosis, and Mr. Factor receiving an atrial fibrillation and cancer diagnosis. *Id*. at 8–9. The Factors do not claim these health issues impacted their financial ability to pay their taxes, just that they consumed significant amounts of their time.

---

[2] Under the Tax Code, all taxpayers, at their request, are entitled to one CDP hearing per taxable period "to which the unpaid tax . . . relates." 26 U.S.C. § 6330.
[3] The assessment dates are relevant for determining the statute of limitations.

*Id*. at 12. Moreover, the Factors supposedly also lost relevant tax records in two different fires: one at their home in 2008 and one at their office in 2011. *Id*. at 14. Once again, the Factors did not provide any evidence of any of these hardships. *Id*. at 8–20.

Despite their misfortunes, the Factors' operated their law practice full-time and from 2005 to 2018 maintained an annual adjusted gross income between $506,066 and $792,246, averaging $669,096 a year. Mot. 17, ECF No. 52. In 2006—when they had yet to file their 2001, 2003, 2004, and 2005 federal income tax returns—the Factors purchased a 5,327 square foot residence in Fort Worth for $950,000 with a $200,000 down payment, $750,000 mortgage, and nearly $8,000 monthly payments. *Id*. at 2. Beginning in 2008, the Factors also financially assisted their three adult sons with tuition and living expenses during college and law school; however, an estimated sum of this assistance is unknown. Mot. App. 148, 169–70, ECF No. 53-3.

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmovant must then provide evidence that a genuine dispute of material fact exists, as a motion for summary judgment "does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment" *Id*.

## III.  ANALYSIS

In its Motion for Summary Judgment, the Government raised five issues, four of which are still before the Court.[4] The first issue arises from the Government's initial cause of action in the Complaint, whereas the other three are affirmative defenses the Factors asserted in their Answer. Compl. 3–5, ECF No. 49; Answer at 5, ECF No. 50. The Factors do not dispute the amount owed, but rather assert they are justified in not paying the amounts due to several affirmative defenses. The Court will address each ground in turn.

### A. Judgment of Assessed Tax Liability

An assessment is "an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242–43 (2002). "It is well established in the tax law that an assessment is entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against a taxpayer in court." *Id*. The Factors do not dispute that they owe taxes for the years at issue, nor do the dispute the amount assessed by the IRS. Instead, the Factors provide a myriad of reasons why they did not pay their taxes and why they should not have to. *See generally,* Resp., ECF No. 55. Because the Factors did not provide any evidence to overcome the presumption that the assessment is correct, the Government's Motion for Summary Judgment that the Factors are liable to the United States in the amount of $1,242,865.95 for their 2005, 2006, 2015, and 2016 federal income taxes less the $107,883.06 and $78,509.56 payments should be granted, contingent on the merit of the Factors' affirmative defenses. Accordingly, the Court will address each affirmative defense before

---

[4] The Government's fifth issue requested the Court foreclose tax liens on the Factors' real property in Colorado and order the sale of the property. ECF No. 52 at 20–21. The Factors sold the real property on December 21, 2020 and paid the Government the net proceeds from the sale ($78,509.56) on January 11, 2021. ECF No. 57 at 5. Thus, the Government declared its fifth claim moot and reduced the Factors' federal income tax liability by $78,509.56. *Id*.

determining whether summary judgment can properly be granted for the Government in its entirety.

**B. Statute of Limitations**

The Factors allege statute of limitations as an affirmative defense to the Government's ability to collect the past due taxes. Answer 5, ECF No. 50. Generally, the Government has ten years after the assessment of a tax to collect it by levy or to commence a court proceeding for its collection. 26 U.S.C. § 6502(a). The Internal Revenue Code provides several exceptions to this general statute of limitations, however. If a taxpayer requests a CDP hearing pursuant to 26 U.S.C. § 6330(a)[5], "the running of any period of limitations under section 6502[6] . . . shall be suspended for the period during which such hearing, and appeals therein, are pending. In no event shall any such period expire before the 90th day after the day on which there is a final determination in such hearing." 26 U.S.C. § 6330(e)(1). The original ten-year statute of limitations is then extended by the number of days it was suspended. *See id*.

The Factors assert that the statutes of limitations for collecting their tax liabilities from 2005 and 2006 have expired. Answer 5, ECF No. 50. Conversely, the Government contends that pursuant to 26 U.S.C. § 6330(e), the ten-year statute of limitations period was extended 1,036 days because the Factors filed a request for CDP hearing on July 30, 2008 regarding their 2005 and 2006 taxes, which was not resolved until March 3, 2011. Mot. 12, ECF No. 52. The Government counted the days between July 30, 2008 and March 3, 2011 and added "the additional 90 days

[5] 26 U.S.C. § 6330(a) states, "No levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made."

[6] The running of any period of limitation under section 6531 or 6532 shall also be suspended during this period, but that part of the quotation is omitted because only 6502 is at issue in this case. 26 U.S.C. § 6330(e)(1).

allowed by Section 6330(e) and Treas. Reg. § 301.6330-1(g)" to form the conclusion that the new bar date is March 15, 2020 for the 2005 taxes and September 6, 2020 for the 2006 taxes. Mot. 12, ECF No. 52.

### 1. Validity of Form 4340

First, the Factors contend that the Government relied on invalid Certificates of Assessments and Payments ("Form 4340") to determine "the dates of assessment for all tax years in question and the dates to which the statute of limitations may have been suspended." Reply 5, ECF No. 50. The Factors claim that the copies of Form 4340 the Government provided the Court are invalid because they are signed by Janice Williams, Accounting Operations Manager, Submission Processing (Austin) when the Commissioner of the IRS did not delegate the authority to her. They form this conclusion because Internal Revenue Manual ("IRM") Delegation Order 11-5 does not include "Operations Manager" in the list of IRS personnel who have the authority "[t]o affix the official seal of the [IRS] to any certificate, or attestation required to be made in authentication of originals and copies of books, records, papers, writings, and documents of the [IRS] . . . ." I.R.M. 1.2.2.11.5(2)–(3); Resp. 3–5, ECF No. 55.

As the Government points out, the Factors ignore that the list of authorized personnel includes: "and supervisory personnel assigned duties requiring the affixing of an official seal." I.R.M. 1.2.2.11.5(3) (12-15-2011). Indeed, Accounting Operations Managers are separately assigned duties requiring the affixing of an official seal on Form 4340. I.R.M. 3.17.243.9.2(4) ("Preparation of Form 4340 is limited to a few authorized campus employees only. At present, these employees are generally in the Compliance and Accounting Branch functions."); *see* I.R.M. 3.17.243.9.2(13) ("The Operations Manager may use either a wet or stamped signature when

signing the Form 4340"). Thus, the Factors' assertion that the Form 4340 presented by the Government is meritless.

### 2. 2005 Tax Assessment Delay

Next, the Factors claim the Government should not be able to use the assessment date (May 14, 2007) as the start date for the statute of limitations to their detriment when they filed their 2005 tax return a month earlier on April 13, 2007. Resp. 6, ECF No. 55. The Factors assert it is "abusive and unreasonable" and a violation of 26 U.S.C. § 6201(a)(1) for the IRS to "[wait] over one full month after the 2005 Federal income tax return was filed to make and confirm the tax assessment." *Id.* The Factors do not cite any cases to support these assertions.

26 U.S.C. § 6201(a)(1) states, "The Secretary shall assess all taxes determined by the taxpayer or by the Secretary as to which returns . . . are made under this title." Section 6201 does not require the Secretary assess taxes in any specific period, nor does it even require they are assessed within a "reasonable" time. The Factors do not dispute that the IRS assessed their 2005 taxes, which is the *only* requirement provided in Section 6201(a)(1). Surely if Congress intended to impose a requirement that taxes shall be assessed within one month of filing it would have expressly done so. Moreover, the Factors even recognize that Section 6501 requires "the amount of tax imposed by this title shall be assessed within 3 years after the return was filed" which wholly contradicts their claim that taking thirty-one days to assess their taxes violates the Code. 26 U.S.C. § 6501(a); Resp. 2, ECF No. 55. Thus, this argument is rejected.

### 3. Date on 2006 Income Tax Return

In their final statute of limitation argument, the Factors claim that because *they* did not date their 2006 income tax return when they signed it, that a genuine dispute of material fact exists on

whether the statute of limitations has passed and if the Government's assessment and collection actions were timely. Resp. 6, ECF No. 55.

As the Factors recognized in their previous argument, the statute of limitations is determined by the date of the Government's assessment, not the date the taxpayers file their return. *See* 26 U.S.C. 6502(a)(1) ("Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun . . . within 10 years after the *assessment* of the tax") (emphasis added). The assessment date for the Factors' 2006 taxes is November 5, 2007. Gov't Mot. App. 205, ECF No. 53-3. Because the Government must assess taxes within three years of filing—and it is not possible that the Factors filed their 2006 tax return before November 5, 2004—the exact filing date is not a material fact. *See* 26 U.S.C. § 6501(a). Therefore, the Government's Motion for Summary Judgment on the statute of limitations defense is **GRANTED.**

### C. Additional Penalty Waiver

The Factors next assert that "[a]ny failure . . . to pay taxes was due to reasonable cause such that the penalties imposed by the IRS should be abated" because "their business was financially incapacitated" by embezzling employees and "both Mr. and Mrs. Factor suffered from serious illness while managing the deaths and serious illnesses of their immediate family members." Resp. 6–13, ECF No. 55. If applicable, this defense is only relevant to the penalties included in the total amount the Factors allegedly owe, not the actual taxes. *See* 26 U.S.C. §§ 6651(a)(2)–(a)(3), 6654(e)(3), 6656(a).

"In the case of any failure by any person to deposit . . . on the date prescribed therefor any amount of tax imposed by this title in such government depository . . . unless it is shown that such

failure is *due to reasonable cause and not due to willful neglect*, there shall be imposed upon such person a penalty equal to the applicable percentage of the amount of the underpayment." 26 U.S.C. § 6656(a) (emphasis added). "To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was due to 'reasonable cause.'" *United States v. Boyle*, 469 U.S. 241, 245 (1985). The Government should prevail on its Motion for Summary Judgment, despite this defense, if there is no evidence that a reasonable jury could return a verdict for the Factors on one or more of these elements. *See id.; Anderson*, 477 U.S. at 248. The Court will address each element in turn.

   1. **Willful Neglect**

Willful neglect "may be read as meaning a conscious, intentional failure or reckless indifference." *Boyle*, 469 U.S. at 245. As evidence of willful neglect, the Government points out that the Factors are attorneys and have a "history of not timely filing their federal income tax returns, not making sufficient quarterly estimated tax payments, and not timely paying their federal income taxes, during tax years 1998-2018." Mot. 15, ECF No. 52. Conversely, the Factors claim "the [G]overnment has presented no evidence that Mr. and Mrs. Factor have committed willful neglect. Rather, the sole issue raised by the [G]overnment is whether any failures to timely file income tax returns and timely pay income taxes were due to reasonable cause." Resp. 9–10, ECF No. 55.

First, the Factors misunderstand the issues raised in the Government's motion. The Government did in fact raise issues of both willful neglect *and* reasonable cause. *See* Mot. 15, ECF No. 52. Second, the Factors also misunderstand the burden of proving *their* defense. *See Ragas*, 136 F.3d at 458. The Factors still have the burden of proof on their affirmative defense, regardless of being the non-movant in this procedural posture. *See id*. The Factors do not attempt to show the

failure is *due to reasonable cause and not due to willful neglect*, there shall be imposed upon such person a penalty equal to the applicable percentage of the amount of the underpayment." 26 U.S.C. § 6656(a) (emphasis added). "To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was due to 'reasonable cause.'" *United States v. Boyle*, 469 U.S. 241, 245 (1985). The Government should prevail on its Motion for Summary Judgment, despite this defense, if there is no evidence that a reasonable jury could return a verdict for the Factors on one or more of these elements. *See id.; Anderson*, 477 U.S. at 248. The Court will address each element in turn.

1. **Willful Neglect**

Willful neglect "may be read as meaning a conscious, intentional failure or reckless indifference." *Boyle*, 469 U.S. at 245. As evidence of willful neglect, the Government points out that the Factors are attorneys and have a "history of not timely filing their federal income tax returns, not making sufficient quarterly estimated tax payments, and not timely paying their federal income taxes, during tax years 1998-2018." Mot. 15, ECF No. 52. Conversely, the Factors claim "the [G]overnment has presented no evidence that Mr. and Mrs. Factor have committed willful neglect. Rather, the sole issue raised by the [G]overnment is whether any failures to timely file income tax returns and timely pay income taxes were due to reasonable cause." Resp. 9–10, ECF No. 55.

First, the Factors misunderstand the issues raised in the Government's motion. The Government did in fact raise issues of both willful neglect *and* reasonable cause. *See* Mot. 15, ECF No. 52. Second, the Factors also misunderstand the burden of proving *their* defense. *See Ragas*, 136 F.3d at 458. The Factors still have the burden of proof on their affirmative defense, regardless of being the non-movant in this procedural posture. *See id*. The Factors do not attempt to show the

Court that a genuine dispute of material fact exists on the willful neglect element. *See* Resp. 9–10, ECF No. 55. Instead, they apparently expect the Court to sift through the evidence to form their defense for them. *See Ragas*, 136 F.3d at 458. Accordingly, the Defendants fail to meet their burden to prove that a genuine issue of material fact exists on this element.

### 2. Reasonable Cause

To prove reasonable cause for not paying his taxes, the taxpayer must demonstrate "he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship . . . if he paid on the due date." *Staff IT, Inc. v. United States*, 482 F.3d 792, 799 (5th Cir. 2007) (citing Treas. Reg. § 301.6330-1(c)(1)). "In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to *all the facts and circumstances* of the taxpayer's financial situation." *Id*. A taxpayer "has not exercised ordinary business care and prudence in providing for the payment of his tax liability" if he "incurs lavish or extravagant living expenses in an amount such that the remainder of his assets and anticipated income will be insufficient to pay his tax." *Id*.

Although neither party provides evidence to show whether the Factors could maintain the lifestyle they did while also paying their income taxes, the Government contends that the Factors' $950,000 home and financial contributions to their adult sons' educations show they lived a lavish lifestyle at the expense of not paying their income taxes. Mot. 15, ECF No. 52. This is disputed by the Factors, who blame their failure to pay taxes on embezzlement by two different employees on two different occasions, records lost in a fire at their home in 2008 and a second fire at their office in 2011, and time-consuming personal and family health issues. *Resp*. 14, ECF No. 55.

To support their claims that they lost records in two fires, the Factors cite cases finding reasonable cause for not *filing* taxes on time due to lost records, but as previously discussed, the Factors filed their tax assessments, they simply failed to pay the amount owed.[7] Resp. 12, ECF No. 55. The Factors also fail to explain how the time they spent caring for the health issues suffered by them and their family inhibited their ability to pay their taxes but not their ability to file their taxes and continuously operate their law firm. Other than their own assertions, the Factors do not provide *any* evidence of these hardships or of how these hardships hindered their ability to file and pay their taxes on time. *See* generally Resp, ECF No. 55; App. to Resp., ECF No. 56. Thus, the Court rejects the Factors' Additional Penalty Waiver defense because they failed to provide evidence that they had reasonable cause for late filing and not paying their income taxes. *See Ragas*, 136 F.3d at 458 ("Needless to say, unsubstantiated assertions are not competent summary judgment evidence"). Finding that Defendants fail to meet their burden to prove a genuine issue of material fact exists on the willful neglect and reasonable cause elements of its affirmative defense, the Government's Motion for Summary Judgment on the statute of limitations defense is **GRANTED.**

### D. Principles of Equity

In their Answer, the Factors alleged that the Government "cannot prevail on its claims because they are not consistent with applicable principles of equity." Answer 5, ECF No. 50. In its Motion, the Government argues that "'Equity' is not a defense to the Factors' tax liabilities" because "the penalties at issue in this case are imposed by statute based on math formulas and time frames [and are] subject only to statutorily authorized reasonable cause defenses" none of which include "equity." Mot. 19, ECF No. 52. In their Response, the Factors do not address the

---

[7] The Factors only face a late filing penalty for their 2005 taxes, which were filed in 2007 before any alleged fire. Compl. 3, ECF No. 49.

"Principles of Equity" defense they pled in their Answer other than acknowledging that the Government contends their "reasonable cause defense should be dismissed because neither 'equity' nor 'financial hardship' are defenses to these penalties." Resp. 15, ECF No. 55.

From their Response, it is evident the Factors did not intend to plead a separate equity defense, as initially indicated in their Answer. *See id*. Thus, the Court does not need to analyze whether a Principles of Equity defense is barrier to the Government's Motion for Summary Judgment.

Because the Factors do not dispute the assessed tax, and each of their affirmative defenses fail, the Court **GRANTS** the Government's Motion for Summary Judgment. The Factors are liable to the Government for $1,056,523.33, their unpaid taxes from 2005, 2006, 2015, and 2016 years.

## IV. CONCLUSION

For the reasons previously stated, the Court **GRANTS** the Government's Motion for Summary Judgment (ECF No. 51).

**SO ORDERED** on this **20th day** of **April, 2021.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**